**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALEXANDER HAYWARD,<br>GUN OWNERS OF AMERICA, INC., and<br>GUN OWNERS FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his Official Capacity as Attorney General of the United States, LT. COL. GEORGE L. BIVENS, in his Official Capacity as Acting Commissioner of the Pennsylvania State Police, and the FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendants. | Civil Action No. ________________ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COME NOW Plaintiffs Alexander Hayward, Gun Owners of America, Inc., and Gun Owners Foundation, by and through undersigned counsel, and allege as follows:

**INTRODUCTION**

1. This case involves a Second Amendment challenge to 18 U.S.C. § 922(t)(1)(C) and 34 U.S.C. § 40901(*l*) (the "Challenged Provisions"), enacted as part of the so-called "Bipartisan Safer Communities Act" of 2022, Pub. L. No. 117-159, 136 Stat. 1313 ("BSCA").

2. When a person purchases a firearm from a licensed dealer in Pennsylvania, the dealer must contact the Pennsylvania Instant Check System ("PICS"), operated by the Pennsylvania State Police ("PSP"), in order to conduct a background check on the prospective purchaser. *See* 18 Pa.C.S. §§ 6111, 6111.1. Among other databases, PICS queries the Federal Bureau of Investigation's ("FBI") National Instant Criminal Background Check System ("NICS"),

which aids in determining whether the prospective purchaser is legally eligible to purchase and possess the firearm under state and federal law. *See* 18 U.S.C. § 922(t).

3. Ideally and ordinarily, background checks are "instant" – that is what Congress promised when enacting the system – and so a purchaser is able to leave a licensed dealer with the firearm they purchased the same day, and usually during the same visit.

4. However, the Challenged Provisions have drastically altered the status quo with respect to legal adults under the age of 21. In "addition to all other requirements" imposed by federal law, the Challenged Provisions now mandate that, for 18-to-20-year-olds, "the system" must contact various additional state and local authorities that might possess potentially disqualifying juvenile and mental-health records. 18 U.S.C. § 922(t)(1)(C); *see* 34 U.S.C. § 40901(*l*)(1).

5. Based on this unique requirement for additional, burdensome investigations into an 18-to-20-year-old's bona fides, which in turn depend upon receiving the responses of multiple state actors, an immediate background-check response is nigh impossible. Thus, *at best*, young adults often face a three-business-day wait before the Challenged Provisions allow a licensed dealer to transfer a firearm to them. *See* 18 U.S.C. § 922(t)(1)(C)(ii). But at worst, if "the system" determines that "cause exists to further investigate a possibly disqualifying juvenile record," the Challenged Provisions impose a *ten-business-day* wait before a transfer may be completed. *See id.* § 922(t)(1)(C)(iii). Realistically, and especially during intervening holidays, the process can take *weeks*.

6. Thus, the Challenged Provisions operate to impose an automatic, nationwide, indefinite waiting period on *every* prospective firearm purchaser who is at least 18 years of age but under age 21, delaying the exercise of, and thereby infringing, the right to keep and bear arms

of this entire category of "the people." Accordingly, the Challenged Provisions treat legal adults under the age of 21 *differently* than adults over age 21, preventing the former from returning home with a firearm the same day they purchase it from a federally licensed dealer. In fact, the Challenged Provisions often delay young adults' exercise of their Second Amendment rights by multiple days, if not *weeks* on end. Plaintiffs therefore seek declaratory and injunctive relief holding the Challenged Provisions unconstitutional under the Second Amendment to the U.S. Constitution.

7. Previously, the U.S. Department of Justice ("DOJ") vigorously defended the constitutionality of the Challenged Provisions.[1] *See* Defendants' Response in Opposition to Plaintiffs' Motion for a Temporary Restraining Order, Preliminary Injunction, and/or Permanent Injunction at 16, *McRorey v. Garland*, No. 7:23-cv-00047-O (N.D. Tex. May 22, 2023), ECF No. 14 (DOJ previously claiming that "the Second Amendment Does Not Secure a Right to Bear Arms Before the Age of Twenty-One").[2]

8. But now, DOJ has changed its position on the constitutional question at the heart of this case. On September 17, 2026, the Department's Office of Legal Counsel published a memorandum opinion concluding that the federal prohibition on the sale of handguns to 18-to-20-year-olds[3] is unconstitutional under the Second Amendment. *See* Exhibit 1, *Application of 18 U.S.C. § 922(b)(1) and (c)(1) to Young Adults*, 50 Op. O.L.C. __ (Sept. 17, 2026) (hereinafter "OLC Opinion").[4] In so concluding, the OLC Opinion explained that 18-to-20-year-olds are "full members" of "the people" entitled to Second Amendment rights. *Id.* at 17. Thus, although the

[1] *See McRorey v. Garland*, 99 F.4th 831 (5th Cir. 2024).
[2] https://storage.courtlistener.com/recap/gov.uscourts.txnd.376789/gov.uscourts.txnd.376789.14.0.pdf
[3] *See* 18 U.S.C. §§ 922(b)(1), (c)(1).
[4] https://www.justice.gov/olc/media/1461811/dl.

OLC Opinion purports to not directly "address … the enhanced investigative period Congress has prescribed for purchasers under twenty-one" at issue here (*id.* at 49), its reasoning forecloses a contrary conclusion.

9. Indeed, the Government cannot have it both ways. If 18-to-20-year-olds are, as DOJ says, fully members of "the people" entitled to the same Second Amendment rights as adults over age 21, then the Government cannot in the same breath constitutionally single them out for a mandatory, categorical delay in acquiring "Arms." Conversely, if the Government were to take the position that the Challenged Provisions' waiting period for 18-to-20-year-olds *is* constitutional, then it necessarily would have to take the same position as to *all* adults – that every adult in the Nation may be subjected to a multi-week waiting period before being permitted to exercise an enumerated natural right. But that is a constitutional nonstarter, and no Founding-era historical tradition supports that proposition. Indeed, it would be startling to learn that a right that is not "in any manner dependent upon [the Constitution] for its existence," *United States v. Cruikshank*, 92 U.S. 542, 553 (1876), in fact permits weekslong delays in order to obtain government preclearance. *See also District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) ("it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right").

10. Plaintiffs therefore bring this action to vindicate their rights in the Third Circuit, whose precedent squarely holds (i) that 18-to-20-year-olds are among "the people" protected by the Second Amendment, (ii) that the right to keep arms necessarily includes the right to acquire them, and (iii) that all "firearm regulations" are subject to rigorous Founding-era historical analysis under the framework established in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

11. And, as a result of DOJ's recent concession that Plaintiffs enjoy the full scope of Second Amendment rights, Plaintiffs seek a preliminary injunction halting enforcement of the Challenged Provisions, as well as permanent injunctive and declaratory relief that the Challenged Provisions violate the Second Amendment.

## PARTIES

12. Plaintiff Alexander Hayward is a natural person and a citizen of the United States and of the Commonwealth of Pennsylvania who resides in Allegheny County, Pennsylvania, within this district. Mr. Hayward is a gun owner, a supporter of the right to keep and bear arms, a member of Plaintiff Gun Owners of America, Inc., and a financial supporter of Plaintiff Gun Owners Foundation. *See* Exhibit 2, Declaration of Alexander Hayward.

13. Mr. Hayward is 20 years old and a law-abiding person who is eligible to purchase and possess firearms under Pennsylvania and federal law. Mr. Hayward has no firearm-prohibiting mental, juvenile, or criminal record. In other words, there is no reason to suspect that Mr. Hayward would be delayed during a background check.

14. Even so, Mr. Hayward recently was delayed in acquiring a firearm.

15. On July 21, 2026, Mr. Hayward visited Verona Gun Safe, a federally licensed firearms dealer located within this district at 716 Allegheny River Boulevard, Verona, PA 15147.

16. While there, Mr. Hayward attempted to pick up an AK-style rifle he had purchased from Palmetto State Armory, an online retailer. Mr. Hayward had selected Verona Gun Safe as his local dealer to facilitate the transfer of this rifle.

17. However, after completing an ATF Form 4473 for this firearm and submitting to a background check as required by law, Mr. Hayward's background check was immediately delayed by virtue of his age.

18. Indeed, because Mr. Hayward is under 21 years of age, federal law requires that he be subjected to an "enhanced" background check under the Challenged Provisions, which require that local authorities be contacted to verify whether or not he has any disqualifying juvenile and mental-health records.

19. Based on these additional, time-consuming requirements, Mr. Hayward was forced to leave Verona Gun Safe emptyhanded that day, awaiting further contact to pick up his rifle once his background check cleared.

20. The next day, on July 22, 2026, Mr. Hayward was informed that his delayed background check finally had been approved, and he picked up his firearm from Verona Gun Safe that day.

21. Unfortunately, that was not the only time Mr. Hayward has been delayed at least a day in receiving a firearm. He also experienced a similar background check-related delay purchasing a different firearm when he was 19 years old.

22. Mr. Hayward wishes to be able to purchase firearms without being subjected to the Challenged Provisions' unpredictable, indeterminate, and unconstitutional delays in the exercise of an enumerated right.

23. In the next 90 days, Mr. Hayward plans to purchase another firearm from a licensed dealer within this district, and when he does, Mr. Hayward once again will be subjected to the Challenged Provisions by virtue of his age. Mr. Hayward also plans to continue acquiring firearms thereafter, until he turns 21 years of age and thereafter. Thus, Mr. Hayward will remain repeatedly subject to the Challenged Provisions' inherent delays until he turns 21.

24. Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-stock corporation with its principal place of business in Springfield, Virginia. GOA is organized and

operated as a nonprofit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. GOA has more than two million members and supporters across the country, including within this district. Many of GOA's members and supporters, like Plaintiff Hayward, are law-abiding Americans who are legal adults under the age of 21. These members and supporters wish to be able to purchase firearms from federally licensed dealers, free from the indefinite age-based delays imposed by the Challenged Provisions. Consequently, GOA members and supporters like Plaintiff Hayward have been, are being, and will continue to be irreparably harmed by the Challenged Provisions' infringement of their Second Amendment rights. *See* Exhibit 3, Declaration of Erich M. Pratt.

25. Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock corporation with its principal place of business in Springfield, Virginia. GOF was formed in 1983 and is organized and operated as a nonprofit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. Although not a "traditional" membership organization, GOF possesses "indicia of membership" under *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977), for purposes of representing its supporters' interests in litigation. *See, e.g.*, *Texas v. BATFE*, 737 F. Supp. 3d 426, 438 (N.D. Tex. 2024); *Silencer Shop Found. v. BATFE*, 2026 U.S. Dist. LEXIS 174125, at *23 (N.D. Tex. Aug. 5, 2026). GOF is financially supported by gun owners across the country, including Plaintiff Hayward and two of GOF's board members, as well as by contributions received from individuals through the Combined Federal Campaign. GOF supporters receive updates about GOF's activities and fund the organization's activities so that it can, *inter alia*, file litigation such as this to preserve, protect, and defend their right to keep and bear arms. GOF brings this action on behalf of its

supporters, many of whom are legal adults under the age of 21 who wish to be able to purchase firearms from federally licensed dealers, free from the indefinite age-based delays imposed by the Challenged Provisions. Consequently, GOF supporters like Plaintiff Hayward have been, are being, and will continue to be irreparably harmed by the Challenged Provisions' infringement of their Second Amendment rights. *See* Exhibit 3, Declaration of Erich M. Pratt.

26. Together, GOA and GOF represent the interests of thousands of members and supporters who are actual and potential firearm purchasers affected by the Challenged Provisions. These background check-related delays are not unique to Plaintiff Hayward, or to Pennsylvania. Rather, GOA and GOF's members and supporters have been affected nationwide.

27. For instance, by operation of the Challenged Provisions, GOA member Ethan McRorey experienced a delay of 10 days in 2023 before he could receive a firearm he had purchased in Texas. Likewise in 2023, Kaylee Flores, another GOA member in Texas, was forced to wait 15 days before her licensed dealer had the statutory option of transferring a firearm to her.[5] In Indiana, GOA member Hayden Haines was delayed 18 days in acquiring a firearm, also by virtue of his age.[6] And in Pennsylvania, GOA and GOF have heard from members and supporters under the age of 21 who continue to experience background check-related delays, as recently as this month, and within this district.

28. Accordingly, both GOA and GOF have representational standing because (a) each of their members who are legal adults under the age of 21 would have standing to sue individually; (b) the interests GOA and GOF seek to protect are germane to their organizational purposes; and

---

[5] *See* Plaintiffs' Reply at 1, *McRorey v. Garland*, No. 7:23-cv-00047-O (N.D. Tex. May 26, 2023), ECF No. 20, https://tinyurl.com/38s4cdds.

[6] *See* Complaint for Declaratory and Injunctive Relief ¶6, *McRorey v. Garland*, No. 7:23-cv-00047-O (N.D. Tex. May 12, 2023), ECF No. 1, https://tinyurl.com/yv8xp4d2.

(c) neither the claims asserted nor the relief requested requires the participation of individual members in the lawsuit.

29. Defendant Todd Blanche is sued in his official capacity as the Attorney General of the United States. Defendant Blanche is a necessary and proper party because he is the official identified throughout the statutory scheme at issue as having the duty and authority to implement, administer, and enforce the Challenged Provisions.

30. Defendant Lt. Col. George L. Bivens is sued in his official capacity as the Acting Commissioner of the Pennsylvania State Police. Defendant Bivens is a necessary and proper party because he is the local official responsible for executing and administering the "enhanced" background-check laws at issue in this case, and he is presently enforcing the laws, customs, practices, and policies challenged and complained of in this matter. In particular, as Acting Commissioner, Bivens has final decision-making authority over PSP, which administers PICS in Pennsylvania and unconstitutionally enforces the Challenged Provisions against Plaintiffs. Defendant Bivens accomplishes these ends using PICS to perform "enhanced" background checks on prospective firearm purchasers, including referring 18-to-20-year-old purchasers to local law enforcement, which results in inevitable purchase delays. In a 2023 annual report, PSP reported that it had begun conducting "enhanced reviews … on firearms purchase/transfer background checks for individuals aged 18-20, pursuant to the Bipartisan Safer Communities Act."[7]

31. Defendant Federal Bureau of Investigation is a law-enforcement component of the Department of Justice, tasked with enforcement of the Challenged Provisions through its operation of the National Instant Criminal Background Check System. By its implementation of the

[7] *Firearms Annual Report*, Pennsylvania State Police (2023), https://www.pa.gov/content/dam/copapwp-pagov/en/psp/documents/firearms/psp_2023_firearms_annual_report.pdf, at 5.

Challenged Provisions and its operation of NICS, the FBI has kept and will keep Plaintiffs from acquiring firearms, thereby infringing their Second Amendment rights.

## JURISDICTION AND VENUE

32. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1346, 2201, and 2202.

33. Venue lies in this Court pursuant to 28 U.S.C. § 1391(e), because a substantial part of the events giving rise to the claims occurred in this district and the individual Plaintiff resides in this district.

## STATEMENT OF FACTS

### A. The BSCA's Unconstitutional Statutory Scheme.

34. On June 25, 2022, then-President Biden signed the BSCA into law, including the Challenged Provisions. One of the Challenged Provisions, 18 U.S.C. § 922(t)(1)(C), provides that, in the case of a prospective firearm purchaser under 21 years of age, a transfer conducted by a licensed dealer may not proceed unless, in addition to all other generally applicable background-check requirements, (i) NICS provides the licensee a unique identification number; (ii) three business days have elapsed and NICS has not notified the licensee that cause exists to further investigate a possibly disqualifying juvenile record; or (iii) where such notice is given, ten business days have elapsed and NICS has not notified the licensee that the transfer would be unlawful.

35. To implement this so-called "enhanced" background check, the BSCA added 34 U.S.C. § 40901(*l*), which directs that, upon a licensed dealer's contact regarding a proposed firearm transfer to a person under the age of 21, "the system shall" immediately contact three separate categories of state and local entities: (i) the state criminal-history repository or juvenile-

justice information system; (ii) the appropriate state custodian of mental-health adjudication records; and (iii) a local law enforcement agency of the jurisdiction in which the person resides.

36. In other words, the Challenged Provisions require, prior to transfer, an affirmative inquiry by the system to, and receipt of a response from, at least three separate state and local officials or agencies, none of which has any obligation to respond. *See Printz v. United States*, 521 U.S. 898 (1997) (federal commandeering of local officials to perform background investigations violates the Tenth Amendment). The Challenged Provisions likewise require the system to inform the licensee whether the transfer may proceed, based on the results of those inquiries.

37. Of course, consistent with *Printz*, the Challenged Provisions impose no duty on state and local officials to investigate or respond. Yet the Challenged Provisions mandate that the system affirmatively determine and inform every dealer, for every purchase by a person under age 21, whether the purchaser has a disqualifying record. If one or more of the three entities fails or refuses to respond, the statute cannot be satisfied as written, and the transfer cannot be approved. Thus, 18-to-20-year-old purchasers are left at the mercy of their firearm dealer, who only *may* (but not "must") transfer a firearm to them once three (or ten) business days have elapsed without an affirmative denial. *See* 18 U.S.C. § 922(t)(1)(C).

38. But many licensees, including several large-chain retailers,[8] decline to transfer any firearm without receiving an affirmative "proceed" from NICS, regardless of how many days elapse. As a consequence, young-adult purchasers who otherwise would receive an immediate

---

[8] *See, e.g.*, *FFL and FFL Transfers*, Range USA, https://rangeusa.com/firearm-transfers (last visited Sept. 28, 2026) (one retailer indicating that it will not approve a transfer without an affirmative "proceed").

"proceed" nevertheless are routinely delayed well beyond even the three- and ten-business-day periods contemplated by the statute, and in some cases indefinitely.

39. The end result is that every firearm purchaser under the age of 21 is automatically and preemptively delayed, for an indefinite period, solely because of their age. But a right delayed is a right denied, and the Challenged Provisions therefore infringe Plaintiffs' right to keep and bear arms.

**B. PSP's Implementation and Enforcement of the Challenged Provisions via PICS.**

40. The Pennsylvania State Police serves as a Point of Contact ("POC") for NICS.

41. Under 28 C.F.R. § 25.2, Point of Contact means:

> [A] state or local law enforcement agency serving as an intermediary between an FFL ["Federal Firearms Licensee"] and the federal databases checked by the NICS. A POC will receive NICS background check requests from FFLs, check state or local record systems, perform NICS inquiries, determine whether matching records provide information demonstrating that an individual is disqualified from possessing a firearm under Federal or state law, and respond to FFLs with the results of a NICS background check. A POC will be an agency with express or implied authority to perform POC duties pursuant to state statute, regulation, or executive order.

42. PSP performs its obligations as a POC through the Pennsylvania Instant Check System ("PICS").

43. Because Pennsylvania is a POC state, PSP has implemented and enforced the Challenged Provisions. *See Firearms Annual Report*, *supra*, at 5.

44. For PICS checks related to firearm purchasers under the age of 21, PSP makes additional, "enhanced" inquiries to state or local custodians of mental-health adjudication records, as well as the local law enforcement agency of the jurisdiction in which the firearm purchaser resides. *See Firearms Annual Report*, *supra*, at 5.

45. Said inquiries are in addition to those required of firearm purchasers who are 21 years of age or older.

46. Consequently, every adult person who attempts to purchase a firearm from a licensed dealer in Pennsylvania, but who is under 21 years of age, is automatically and preemptively delayed solely because of their age.

### C. The Department of Justice Has Concluded that Age-Based Restrictions on Young Adults' Acquisition of Arms Are Unconstitutional.

47. On September 17, 2026, the Department of Justice's Office of Legal Counsel issued a memorandum opinion to the Attorney General, concluding that 18 U.S.C. § 922(b)(1) and (c)(1), which prohibit federally licensed dealers from selling handguns to 18-to-20-year-olds, are unconstitutional and may not be enforced. The Department publicly released the OLC Opinion on September 18, 2026.

48. The OLC Opinion rests on two conclusions that are directly relevant here. First, because legal adults under the age of 21 are "'mature enough to be drafted, vote, serve as a juror, and be sentenced to death,'" they unquestionably are "members of the political community" and therefore are "members of 'the people'" protected by the Second Amendment. OLC Opinion at 1, 26. Second, the purchase and acquisition of arms from licensed dealers falls within the Second Amendment's plain text, because "[c]onstitutional rights 'implicitly protect those closely related acts necessary to their exercise.'" *Id.* at 23; *see also id.* (cleaned up) ("we agree … that the right to keep and bear arms surely implies the right to purchase them").

49. Applying the textual and historical framework of *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), as reiterated by *Wolford v. Lopez*, 146 S. Ct. 2032 (2026), the OLC Opinion then explains that there is no Founding-era historical tradition of precluding legal adults from purchasing firearms. To the

contrary, the record is replete with examples of young adults acquiring, possessing, and using firearms, and in fact Founding-era statutes overwhelmingly *required* those ages 18 and older to serve in the militia and furnish their own arms. *See* OLC Opinion at 10.

50. The OLC Opinion claims to take no position on the Challenged Provisions. *See* OLC Opinion at 49 ("we do not address … the enhanced investigative period Congress has prescribed for purchasers under twenty-one"). But the reasoning and conclusions from the OLC Opinion are fatal to the Challenged Provisions. Indeed, the Challenged Provisions burden the very same conduct the OLC Opinion explained is protected – the acquisition of firearms. And the Challenged Provisions infringe the rights of the same class of persons the OLC Opinion explained are counted among "the people" – 18-to-20-year-old adults. If the outright prohibition on a young adult's acquisition of a handgun infringes the Second Amendment, then the mandatory, indefinite delay the Challenged Provisions impose *only* on young adults' acquisition of firearms infringes it as well.

51. While the Department framed the OLC Opinion as addressing Sections 922(b)(1) and (c)(1), rather than the Challenged Provisions, its reasoning cannot be cabined to the handgun-sales ban. Either 18-to-20-year-olds are full members of "the people" whose acquisition of arms the plain text protects, or they are not. The Department now has taken the former position, and that position cannot be reconciled with a statutory scheme that subjects those same young adults, and only those young adults, to an automatic waiting period.

**D. The Second Amendment Protects Plaintiffs' Acquisition of Firearms.**

52. The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

53. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment guarantees to individuals the pre-existing right to possess and carry arms for self-defense and other lawful purposes. *Id.* at 592. In *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Court held the right fully applicable to the states. And in *Caetano v. Massachusetts*, 577 U.S. 411 (2016), the Court reaffirmed that the Amendment extends, prima facie, to all bearable arms. *Id.* at 411.

54. Then, in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Court explained that, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. There is no unprincipled interest balancing or means-end scrutiny to be conducted. Instead, the only relevant question is whether a challenged firearm regulation comports with the Second Amendment's text, as historically understood.

55. Thus, if a challenged law places "*any restrictions* on either the 'keep[ing]' (*i.e.*, possession) or the 'bear[ing]' (*i.e.*, carrying) of arms," it is "presumptively unconstitutional" and subject to historical analysis. *Wolford*, 146 S. Ct. at 2043, 2044 (emphasis added).

56. The "textual analysis is straightforward," *ANJRPC, Inc. v. Att'y Gen. N.J.*, 183 F.4th 211, 239 (3d Cir. 2026), and Plaintiffs easily satisfy this threshold step here. Indeed, Plaintiffs are (admittedly and indisputably) members of "the people," the firearms they wish to acquire are (admittedly and indisputably) "implements used for offense or defense" and therefore are "Arms," *Wolford*, 146 S. Ct. at 2041, and the acquisition of firearms falls (admittedly and indisputably) within the right to "keep and bear" them.

57. The Third Circuit's precedents reinforce each of these conclusions and bind this Court here.

58. First, it is settled law in the Third Circuit that 18-to-20-year-old adults are among "the people" protected by the Second Amendment. *Lara v. Comm'r Pa. State Police*, 125 F.4th 428 (3d Cir.), *reh'g en banc denied*, 130 F.4th 65 (3d Cir. 2025), *cert. denied sub nom. Bivens v. SAF*, 2026 U.S. LEXIS 2891 (U.S. June 30, 2026). Now, the Department of Justice has reached the same conclusion in its OLC Opinion. *See* OLC Opinion at 48.

59. Second, Plaintiffs' desired firearms unquestionably are "Arms." Plaintiffs wish to acquire long guns, such as semiautomatic rifles. *See* Exhibit 2, ¶¶5, 12. As the en banc Third Circuit recently explained, the Second Amendment protects "the full class of semi-automatic rifles." *ANJRPC*, 183 F.4th at 223.

60. Third, the Third Circuit has "agree[d]" that "'[t]he right to keep arms[] necessarily involves the right to purchase them," because "the Second Amendment right, like other rights, 'implicitly protect[s] those closely related acts necessary to [its] exercise.'" *United States v. Clerfe*, 2026 U.S. App. LEXIS 24094, at *8 (3d Cir. Aug. 10, 2026); *accord Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) (Second Amendment "implies a corresponding right to acquire"); *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) ("the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms"). The OLC Opinion has reached the same conclusion, too. *See* OLC Opinion at 23.

61. Thus, because the Second Amendment's plain text covers Plaintiffs' desired conduct, the burden is on Defendants to demonstrate that the presumptively unconstitutional Challenged Provisions are consistent with the Nation's historical tradition of firearm regulation.

62. To that end, the Third Circuit also has spoken on the relevant timeframe for historical analysis. In *Lara*, the court explained that "the constitutional right to keep and bear arms should be understood according to its public meaning in 1791." *Lara*, 125 F.4th at 441. Thus, "we must look to Founding-era laws for analogies to modern-day regulations." *ANJRPC*, 183 F.4th at 232.

63. But there is no relevantly similar Founding-era analogue for the Challenged Provisions' mandatory waiting period on the acquisition of firearms by legal adults. Indeed, there is no Founding-era tradition of requiring government preclearance *at all* in order to keep or bear arms. Defendants therefore cannot carry their burden, as the Department of Justice's own Office of Legal Counsel has now effectively conceded.

64. The Supreme Court has expressly warned of the risk of delay inherent to all government-mandated preclearance regimes, cautioning that it would "not rule out constitutional challenges to … regimes where, for example, lengthy wait times in processing … deny ordinary citizens their right" to keep and bear arms. *Bruen*, 597 U.S. at 38 n.9. The Challenged Provisions impose precisely such delay, automatically and indefinitely, on every young adult in the Nation.

**E. The Fifth Circuit's Contrary Decision in *McRorey* Was Wrongly Decided and Does Not Bind This Court.**

65. The only court of appeals to uphold the Challenged Provisions did so in *McRorey v. Garland*, 99 F.4th 831 (5th Cir. 2024), and it did so through reasoning that the Third Circuit has foreclosed and which this Court should reject. *McRorey* is not binding in this Circuit, and it cannot be reconciled with Third Circuit precedent, with *Bruen* and its progeny, with the Department of Justice's own recently adopted position, or even with the Fifth Circuit's own subsequent cases.

66. First, *McRorey* concluded that acquisition of arms is *not* covered by the Second Amendment's plain text because, simplistically, the phrase "keep and bear" does not include

"purchase." 99 F.4th at 838. But that premise is squarely contrary to the Third Circuit's decision in *Clerfe*, which "agree[d]" that "'[t]he right to keep arms[] necessarily involves the right to purchase them.'" 2026 U.S. App. LEXIS 24094, at *8. To hold otherwise would mean "Congress could throttle gun ownership without implicating Second Amendment scrutiny by just banning the buying and selling of firearms. What a marvelous, Second Amendment loophole!" *United States v. Hicks*, 649 F. Supp. 3d 357, 360 (W.D. Tex. 2023), *rev'd on other grounds*, 2025 U.S. App. LEXIS 18297 (5th Cir. July 23, 2025).

67. Second, having removed acquisition from the plain text, the *McRorey* panel refused to conduct any historical analysis, proceeding instead to consider the severity of the Challenged Statutes' burden by atextually asking whether the Challenged Provisions amounted to a "functional prohibition[] on keeping" or otherwise were "put toward abusive ends." 99 F.4th at 838. And as is the unsurprising case with this sort of "judge-empowering 'interest-balancing'" (*Bruen*, 597 U.S. at 22), the *McRorey* panel summarily concluded that the Challenged Provisions' waiting period "d[id] not qualify" as sufficiently "abusive" to warrant historical scrutiny. 99 F.4th at 840. Of course, this novel approach revived the very means-end scrutiny that *Bruen* abolished,[9] and it contravenes *Wolford*'s clear instruction, not to mention Third Circuit precedent and even the Fifth Circuit's subsequent decisions.

68. Third, *McRorey* rested on a fundamental misreading of *Bruen*'s footnote nine, and one that *Wolford* has since corrected. *McRorey* posited that *Bruen*'s ninth footnote – which briefly contrasted various "shall-issue" public-carry licensing regimes that were not at issue in *Bruen* –

[9] In fact, the Fifth Circuit judge who authored *McRorey* was the same judge who authored the Fifth Circuit's primary interest-balancing decision whose reasoning *Bruen* later rejected. *See McRorey*, 99 F.4th at 838 n.18 (citing *Bezet v. United States*, 714 F. App'x 336, 341 (5th Cir. 2017)).

actually *established* a category of "presumptively constitutional" regulations into which the Challenged Provisions fell. 99 F.4th at 838. But the Challenged Provisions are not a "shall-issue" carry-licensing regime; they are a categorical, age-based waiting period on acquisition that produces the very delay *Bruen* contemplated. Moreover, *McRorey*'s reading is irreconcilable with *Wolford*, which subsequently explained that "*any* restrictions on either the 'keep[ing]' (*i.e.*, possession) or the 'bear[ing]' (*i.e.*, carrying) of arms" are "presumptively *un*constitutional" and subject to *Bruen*'s historical analysis. 146 S. Ct. at 2043, 2044 (emphases added).

69. Fourth, a subsequent panel of the Fifth Circuit has since held the federal prohibition on handgun sales to 18-to-20-year-olds unconstitutional, distancing itself from *McRorey* in the process. *See Reese v. BATFE*, 127 F.4th 583, 590 n.2 (5th Cir. 2025). If the Fifth Circuit will not follow its own misguided precedent, neither should this Court. The Department of Justice now has adopted the correct position in its OLC Opinion, further repudiating *McRorey*'s faulty reasoning.

**F. Plaintiff Alexander Hayward.**

70. Alexander Hayward is a law-abiding person with no disqualification under Pennsylvania or federal law that would prohibit him from purchasing or possessing a firearm.

71. Plaintiff Hayward has no firearm-prohibiting mental, juvenile, or criminal record. But for the Challenged Provisions, there is no reason to suspect that Plaintiff Hayward would be delayed during a background check. Yet as a direct result of the Challenged Provisions, Plaintiff Hayward will receive an automatic delay every time he attempts to purchase a firearm.

72. On July 21, 2026, Plaintiff Hayward was delayed in his acquisition of an AK-style rifle from Verona Gun Safe in Verona, Pennsylvania. After completing an ATF Form 4473, the dealer submitted Plaintiff Hayward's information to PICS. As required by the Challenged

Provisions, Plaintiff Hayward was immediately delayed and was unable to complete the purchase or take possession of the firearm, and instead was forced to leave the store emptyhanded. Only after his background check cleared the next day was Plaintiff Hayward able to take possession of his firearm.

73. This harm will recur each time Plaintiff Hayward attempts to purchase a firearm in the future, until he turns 21 years of age. Thus, Plaintiff Hayward will suffer another unconstitutional delay when he purchases another firearm within the next 90 days, as well as each time he purchases a firearm thereafter, as he intends, until he turns 21. And the same is true for every 18-to-20-year-old in the Nation, including many of the members and supporters of Plaintiffs GOA and GOF, who wish to purchase firearms from licensed dealers.

74. This case therefore will not be mooted even upon a successful purchase, because the harm is "capable of repetition, yet evading review." *See Ill. Elections Bd. v. Socialist Workers Party*, 440 U.S. 173, 187 (1979). Moreover, there are thousands of 18-to-20-year-old members and supporters of GOA and GOF nationwide who are being and will continue to be subjected to the effects of the Challenged Provisions absent relief from this Court.

## COUNT I
## U.S. CONST. AMEND. II – RIGHT TO KEEP AND BEAR ARMS
## DECLARATORY AND INJUNCTIVE RELIEF
## AGAINST FEDERAL DEFENDANTS

75. The foregoing allegations are repeated and realleged as if fully set forth herein.

76. The Challenged Provisions infringe Plaintiffs' Second Amendment rights, which "shall not be infringed," including the right of "the people" to acquire "Arms" for self-defense.

77. Plaintiffs are or represent members of "the people" who desire to exercise their right to keep and bear arms by acquiring firearms from licensed dealers. The Second

Amendment's plain text covers that conduct, and the Constitution therefore presumptively protects it.

78. Defendants cannot demonstrate that the Challenged Provisions are consistent with this Nation's historical tradition of firearm regulation, as there is no relevantly similar Founding-era or later analogue to a mandatory period of delay before a law-abiding adult may acquire a firearm.

79. Because of Defendants' enforcement of the Challenged Provisions, Plaintiffs have suffered an infringement of their Second Amendment rights.

80. Without this Court's intervention, Defendants will continue to irreparably harm Plaintiffs in the future through enforcement of the Challenged Provisions.

81. Plaintiffs have no adequate remedy at law to redress their injuries, and so issuance of injunctive relief is necessary to prevent imminent and irreparable constitutional harm.

82. Indeed, the "loss of [constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (First Amendment); *see also Bruen*, 597 U.S. at 70 ("The constitutional right to bear arms … is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'").

83. Defendants' enforcement of the Challenged Provisions against young adults has real-world effects. As stated, Plaintiff Hayward has been delayed in acquiring firearms in the recent past. Having recently reached the age at which firearm ownership is lawful, 18-to-20-year-olds like Plaintiff Hayward are within a class of younger adults who are the least likely to already

possess a firearm,[10] and thus in greatest need of being able to quickly obtain one with which to protect themselves. Indeed, young adults represent the age groups most likely to be victims of serious and violent crime, and thus are most in need of the tools with which to defend themselves.[11]

84. Thus, the Challenged Provisions invariably will result in young adults being delayed in acquiring firearms, and therefore being unable to defend themselves. Such delays – even temporary ones – have literally meant the difference between life and death for other Americans.[12]

85. By infringing the right to keep and bear arms, the Challenged Provisions violate the Second Amendment and should be declared invalid and unenforceable.

**COUNT II**
**U.S. CONST. AMENDS. II & XIV – RIGHT TO KEEP AND BEAR ARMS**
**DECLARATORY AND INJUNCTIVE RELIEF**
**AGAINST DEEFENDANT BIVENS**
**42 U.S.C. § 1983**

86. The foregoing allegations are repeated and realleged as if fully set forth herein.

87. As the Acting Commissioner of the Pennsylvania State Police, Defendant Bivens is responsible for executing and administering PSP's PICS background-check system, which conducts "enhanced reviews … on firearms purchase/transfer background checks for individuals

---

[10] *See Percentage of Population in the United States with at Least One Gun in the Household in 2025, by Age*, Statista (Mar. 2025), https://www.statista.com/statistics/623409/gun-ownership-in-the-us-by-age/.

[11] *See* Craig A. Perkins, *Bureau of Justice Statistics Special Report: Age Patterns of Victims of Serious Violent Crime*, DOJ (July 1997), https://bjs.ojp.gov/content/pub/pdf/apvsvc.pdf ("Persons age 18 to 21 were the most likely to experience a serious violent crime" at a rate "17 times higher than for persons age 65 or older," and "more than a fifth of all rape/sexual assault victims were age 18 to 21," which is "almost 22 times higher than those for age 25 to 29," and "persons 18 to 21 were most at risk of becoming a murder victim.").

[12] *See, e.g.*, Perry Chiaramonte, *'No One Helped Her': NJ Woman Murdered by Ex While Awaiting Gun Permit*, Fox News (Jan. 12, 2017), https://www.foxnews.com/us/no-one-helped-her-nj-woman-murdered-by-ex-while-awaiting-gun-permit.

aged 18-20, pursuant to the Bipartisan Safer Communities Act," such as Plaintiff Hayward and the members and supporters of Plaintiffs GOA and GOF. *Firearms Annual Report*, *supra*, at 5; *see also* 18 Pa.C.S. § 6111.1.

88. Such enforcement by Defendant Bivens of the laws, customs, practices, and policies challenged in this case have caused, and will cause, Plaintiffs to be delayed in the acquisition of firearms, thereby irreparably injuring them and violating their Second Amendment rights.

89. Defendant Bivens is sued in his official capacity.

90. As a state actor, the Second Amendment's protections apply against Defendant Bivens by operation of the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

91. Defendant's participation in the enforcement and administration of the Challenged Provisions harms Plaintiffs in violation of 42 U.S.C. § 1983.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1. An order preliminarily and then permanently enjoining Defendants and their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the order from administering, enforcing, or otherwise requiring compliance with the Challenged Provisions;

2. An order declaring that the Challenged Provisions are invalid, unenforceable, unconstitutional, and violative of the Second and Fourteenth Amendments to the United States Constitution;

3. An award of attorneys' fees and litigation costs reasonably incurred, pursuant to 28 U.S.C. § 2412, 42 U.S.C. § 1988, and any other applicable authority; and

4. Such other and further relief as is necessary to effectuate the Court's judgment or that the Court otherwise deems just and appropriate.

Dated: October 9, 2026

Respectfully submitted,

Oliver M. Krawczyk (PA 334423)
Gilbert J. Ambler (PA 326124)
AMBLER LAW OFFICES, LLC
115 South Hanover Street, Suite 100
Carlisle, PA 17013
T: (717) 525-5822
F: (540) 773-2414
E: oliver@amblerlawoffices.com
E: gilbert@amblerlawoffices.com

*/s/ Michael A. Giaramita Jr.*
Michael A. Giaramita Jr. (PA 319299)
GIARAMITA LAW OFFICES, P.C.
101 West Chester Pike, Suite 1A
Havertown, PA 19083
T: (484) 558-0076
F: (484) 202-6332
E: mike@glawpa.com

*Attorneys for Plaintiffs*